**EISAI CO., LTD., et al., Plaintiffs,**

v.

**TEVA PHARMACEUTICALS USA, INC., et al., Defendants.**

**Civil Action No. 05–5727 (HAA).**

United States District Court,
D. New Jersey.

Feb. 13, 2008.

Court's December 6, 2007 Opinion denying in part and granting in part Defendants' motion to amend the answer. (Docket Entry # 102). Thus, the Court sets forth below an abbreviated version of the facts that focuses upon those necessary for resolution of the present motion.

Plaintiffs initiated this action on December 7, 2007, alleging infringement of U.S. Patent No. 4,895,841 ("the 841 patent"), which issued on January 23, 1990 and arose from the prosecution of U.S. Patent Application No. 07/209,339 ("the 339 application"). The '841 patent claims "donepezil hydrochloride," the active ingredient in Aricept, a market-leading drug in the treatment of Alzheimer's Disease.

Bruce M. Wexler, Joseph M. O'Malley, Paul, Hastings, Janofsky & Walker LLP, New York, NY, William J. Heller, Jonathan M.H. Short, Mark H. Anania, Nicole A. Corona, McCarter & English, LLP, Newark, NJ, for Plaintiffs.

Michael E. Patunas, Allyn Zissel Lite, Lite, Depalma, Greenberg & Rivas, LLC, Newark, NJ, for Defendants.

### ORDER

ESTHER SALAS, United States Magistrate Judge.

Pending before this Court is a Motion by Eisai Co., Ltd. and Eisai Inc. ("Eisai" or "Plaintiffs") to strike portions of the Amended Answer filed on December 17, 2007 (Docket Entry # 105) by Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd. ("Teva" or "Defendants"). For the reasons set forth below, Plaintiffs' motion is **GRANTED.**

## I. BACKGROUND

The facts underlying this Hatch–Waxman action are set forth in detail in this

At the inception of this case, Defendants filed an Answer in which they asserted the affirmative defense of obviousness. Then, on May 15, 2007, they moved to amend their Answer to add the affirmative defense of inequitable conduct stemming from Plaintiffs' alleged failure to disclose the following co-pending patent applications to the patent examiner in charge of the '339 application:

1) Applications 06/946,459 and 07/321,624 ("the '459 application family") which issued as U.S. Patent Nos. 4,849,432 ("the '431 patent") and 4,942,169 ("the '169 patent");

2) Applications 07/016,035 and 07/408,106 ("the '035 application family"), which issued as U.S. Patent Nos. 4,876,262 ("the '262 patent") and 4,996,215 ("the '215 patent");

3) Application 07/177,662 ("the '662 application") which issued as U.S. Patent No. 4,921,863 ("the '863 patent"); and

4) Application 07/273,971 and its continuation applications, U.S. Patent Application Nos. 07/495,112, 07/668,327, and 07/825,423 ("the '971 application family")

which issued as U.S. Patent No. 5,196,-439 ("the '439 patent").

In a December 6, 2007 Opinion ("the Opinion"), this Court found that Teva had failed to adequately allege, under the heightened pleading standard of Fed. R.Civ.P. 9(b), the two required elements of inequitable conduct—materiality and intent—with respect to all co-pending applications except for the '459 application family. (Docket Entry # 102). Thus, the Court granted Teva's motion in part and allowed it to file an Amended Answer that included an inequitable conduct defense only with respect to the '459 application (and a related Kenley reference). (*Id.* at 12).

On December 17, 2007, Teva filed the corresponding Amended Answer (Docket Entry # 105), in which it withdrew its affirmative defense of obviousness and added the inequitable conduct defense, with respect to the '459 application and Kenley reference, allowed by the December 6, 2007 Opinion. Plaintiffs, however, claim that the Amended Answer far exceeded the scope of allegations permitted by the Opinion because Teva re-inserted references to other co-pending applications. Thus, Plaintiffs ask the Court to strike, pursuant to Fed.R.Civ.P. 12(f), the following portions of the Amended Answer:[1]

> 1) In or about December 1985, Eisai commenced a pattern of filing and prosecuting a series of overlapping patent applications in Japan, the United States, Europe and other countries with the goal of (1) erecting walls of blocking patents that would prevent competitors of Eisai from developing a compound that would compete with the compound Eisai identified as its lead component for the treatment of ASD and (2) increasing the likelihood that these blocking patents would have broader coverage, longer durations and less restrictions on assignment than Eisai was entitled to under U.S. Patent law. (Am. Answer ¶ 37);

> 2) The Applicants also filed and prosecuted a series of other United States applications with claims overlapping those of the '459 and '339 applications prior to the issuance of the '841 patent, including U.S. Application Nos. 07/016,-035, 07/408,106, 07/177,662, and 07/273,-971. Each of these applications was assigned to a different examiner and Applicants did not disclose any of these co-pending applications to any of the examiners handling any of the other applications. This pattern of non-disclosure further supports the conclusion that failure by Applicants to disclose the co-pending '459 application and Kenley was done intentionally to deceive the Examiner of the '339 application. (Am. Answer ¶ 47);

> 3) "As part of this pattern, . . ." (Am. Answer ¶ 38);

> 4) "The pattern of conduct detailed above. . . ." (Am. Answer ¶ 46); and

> 5) "and the withheld co-pending applications" (Am. Answer ¶ 46)

This Court now evaluates the above-referenced portions of the Amended Answer against the December 6, 2007 Opinion, the elements of the inequitable conduct defense, and the pleading requirements of Fed.R.Civ.P. 9(b).

---

1. The amended answer in the 05–5727 action is the same as that in the 07–5489 action. As per this Court's January 2, 2008 consolidation order (Docket Entry # 113), all orders in the first suit are binding on the parties in the second. Thus, while this opinion cites to documents and pleadings from the 05–5727 action, it applies as well to corresponding pleadings in the second action.

## II. ANALYSIS

Fed.R.Civ.P. 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The motion to strike an affirmative defense challenges the legal sufficiency of the pleading and is therefore governed by the same standard as a 12(b)(6) motion to dismiss. *Mars Inc. v. JCM American Corp.*, No. 05–3165, 2006 WL 1704469 at *4 (D.N.J. June 14, 2006). An affirmative defense is insufficient as a matter of law if it cannot succeed under any circumstances. *In re Sunrise Sec. Litig.*, 818 F.Supp. 830, 840 (E.D.Pa.1993).

▮ The affirmative defense of inequitable conduct requires Teva to plead two elements 1) the failure to disclose known material information during the prosecution of a patent, 2) with intent to deceive the Patent and Trademark Office ("PTO"). *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1324 (Fed.Cir.2000). Under Fed.R.Civ.P. 9(b), each element must be plead with particularity. In its December 6, 2007 Opinion, this Court found that Teva had failed to meet the Rule 9(b) pleading standards with respect to all but one of the allegedly undisclosed co-pending applications. Specifically, with regard to the '035, '662, and '971 applications, Teva failed to allege intent to deceive the PTO and also failed to plead enough factual content that would substantiate claims of materiality to the '841 patent.

▮ Teva, on its part, raised the same conflicting arguments then, in favor of its motion to amend, that it now raises in opposition to the present motion to strike. In its motion to amend, Teva attempted to skirt the pleading requirements of Rule 9(b) by arguing, unsuccessfully, that the '035, '662, and '971 applications represented evidence of intent to deceive the PTO rather than separate and individual instances of inequitable conduct. Thus, Teva

asked the Court to evaluate the motion to amend as pertaining to one allegation of inequitable conduct (with respect to the '459 application family) containing a pattern of failures to disclose (evidenced by the '035, '662, and '971 applications). This argument, however, conflicted with the language of Teva's proposed amended complaint, in which it specifically alleged materiality with respect to each of the co-pending applications. The proposed amended complaint made clear that Teva alleged four separate bases of inequitable conduct, and the Court evaluated its motion accordingly. (Docket Entry # 102 at 10–11).

Now, Teva resurrects the exact same "single basis of inequitable conduct" argument. And again, the argument fails. Teva first asserts that the allegations concerning other co-pending applications are included as "part of the facts and circumstances from which it is appropriate to infer that the specific instance of inequitable conduct ... was done with intent to deceive." (Teva Br. at 1). Thus, Teva wants to use the other applications as atmospherics to help it prove intent to deceive. But several pages later, with respect to the same co-pending applications, Teva argues that "there was a pattern of repeatedly failing to disclose co-pending applications that should have been disclosed." (*Id.* at 6). Moreover, Teva argues that the "knowledge of a copending (*sic*) application with overlapping claims would be important to an examiner, because it would be the basis for issuing a double patenting rejection." (*Id.*). Thus, Teva's brief begins with a claim that the co-pending applications only speak to intent but ends with an argument as to their materiality.

Moreover, aside from Teva's conflicting arguments, the fact of the matter is that co-pending applications are only relevant

insofar as they are material. Without alleging materiality, Teva has no basis upon which to assert that the co-pending applications should have been disclosed to the patent examiner. It follows that those co-pending applications do not evidence an intent to deceive and cannot be used in that manner. As Eisai argues, "[o]ne cannot intend to deceive by not disclosing information not alleged to be material." (Reply Br. at 2). This Court agrees. Failure to alert a patent examiner to a co-pending application cannot be deceitful if the application is not material.

Finally, the cases cited by Teva do not hold to the contrary. Rather, they agree with the fundamental proposition that co-pending applications, when used as evidence of an intent to deceive, must be material. In Teva's own submission, the parenthetical to *Nisus Corp. v. Perma-Chink Systems, Inc.*, 2006 WL 2128903 at *3 (E.D.Tenn.2006), says that the PTO found an intent to deceive by examining a "pattern of intentional failures to disclose highly *material* information to the PTO over a long period of time." (Emphasis added). Similarly, in *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1259 (Fed.Cir.1997), Teva's parenthetical references the repeated failure to disclose a "material reference" during the course of prosecution. And finally, in *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1376 (Fed.Cir.2000), the Court found intent to deceive based upon the "misleadingly incomplete, partial translation" of a material Japanese prior art patent. All three of these cases, therefore, use a pattern of failing to disclose *material* information as evidence of intent to deceive.

Teva's Amended Answer, with respect to references to other co-pending applica-

tions, remains legally insufficient. As such, Eisai's motion to strike is **GRANTED**. Teva shall file a new amended answer in accordance with the above rulings within 5 days of receiving this Order.

**SO ORDERED.**